IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MEYERS DIVISION

CASE NO. 2:09-cv-00267-CEH-SPC

SKYTRUCK COMPANY, LLC, a Florida LLC,

     Plaintiff,

vs.

SIKORSKY AIRCRAFT CORPORATION, a Connecticut corporation, and POLSKIE

ZAKLADY LOTNICZE, a Polish corporation.

     Defendants,

_____/

## MOTION FOR SUMMARY JUDGMENT
## RE DEFENDANTS' AFFIRMATIVE DEFENSES

     Plaintiff, Skytruck Company, LLC (hereafter "Skytruck" or "Plaintiff") moves for summary judgment on certain affirmative defenses asserted by Defendants Polskie Zaklady Lotnicze ("PZL") and Sikorsky Aircraft Corporation ("Sikorsky") in their answers (Dft 143 and 141 respectively). [1] In particular, plaintiff moves for summary judgment dismissing defendants' affirmative defenses as follows: unclean hands - Sikorsky's 2nd and PZL's 1st; waiver - Sikorsky's 4th and PZL's 9th; "never appointed sales agent" - Sikorsky's 6th and PZL's 8th and 13th; setoff - Sikorsky's 7th and PZL's 5th and 15th; "No reasonable expectation of compensation" - Sikorsky's 3rd and PZL's 4th and 6th ; "termination of the Distributor Agreement" PZL's 14th; and estoppel - PZL's 16th.

---

[1] To clarify, this is not a motion in limine to exclude evidence.  That is, defendants may argue, for example, that evidence of the termination of the Distribution Agreement or of their "no-role" letters is admissible for other reasons.  But their admissibility argument is irrelevant the issue other whether there are triable issues of fact as to all the elements necessary to support their affirmative defenses.

# I. INTRODUCTION

This is an unjust enrichment claim against defendants for compensation arising out of a $90+ million sale by defendants PZL and Sikorsky to plaintiff Skytruck's customer Sierra Nevada.  Under Florida law, which applies to this diversity action, where the plaintiff conferred a benefit on the defendants who voluntarily accepted and retained the benefit, plaintiff is entitled to compensation if the circumstances are such that it would be inequitable for the defendants to retain that benefit without paying its value to the plaintiff.  Florida law specifically applies unjust enrichment to a broker such as Skytruck, who is the procuring cause of the sale but was intentionally excluded by the buyer and seller from completing the transaction.  Skytruck claims the value of the benefit, i.e. the $90+ million sale, is equal to the commission it would otherwise have been entitled to - which it estimates to be in excess of $13 million.

# II. STANDARD OF REVIEW

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." *Moton*, 631 F.3d at 1341 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all reasonable inferences in favor of the party opposing summary judgment," *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all possible inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.* , 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. SUMMARY OF THE ARGUMENT

Skytruck alleges that defendants conferred upon defendants a $90+ million airplane sale.[2] Defendants knew about the sale and voluntarily accepted and retained this lucrative benefit.[3] The benefit was conferred with defendant's knowledge. That is, the benefit, i.e. Sierra Nevada

---

[2] Although Sikorsky claims it did not directly benefit from the sale, PZL cannot seriously argue that it did not benefit.

[3] Sikorsky may argue that they did not directly benefit but they cannot argue they did not knowingly and voluntarily accept the benefit.

Corporation ("Sierra Nevada"), was literally brought to defendants' doorstep, the factory, where they had the opportunity to reject it.[4]  At first they rejected the customer by falsely stating there were no uncommitted airplanes available and by refusing to host the factory visit. If defendants had stuck to this position and refused to sell airplanes to Sierra Nevada, Skytruck could not claim unjust enrichment.  But defendants got greedy and reversed their position with full knowledge that Skytruck believed it was entitled to compensation and with the intent to do whatever was necessary to avoid paying them.

Skytruck's claim for unjust enrichment seeks money damages for the value of the benefit conferred on defendants.  Skytruck argues that the value of this benefit is measured by the commission they would otherwise have to pay to a distributor.  To be clear, Skytruck does not seek money damages for the value of their services - which is not the proper measure of damages in a claim for unjust enrichment.  Unjust enrichment is a "quasi contact" claim based on a contract implied in law.  This is distinguishable from a claim for *quantum meruit* which is based on a contract implied in fact where the damages are the value of the services.

Skytruck's claim for unjust enrichment is based in part on the lack of a contract or even facts from which a contact may be implied.  Here again, its claim is distinguishable from a claim for *quantum meruit* which is based on a contract implied in fact.   Accordingly Skytruck's claim for unjust enrichment is not barred by defendants' alleged refusal to do business with them because defendants voluntarily and knowingly accepted the benefit brought to them by Skytruck.[5]

---

[4] Defendants may claim that Skytruck did not confer this benefit on them because the customer would have come to their doorstep in any case.  But at best, that is an issue of fact which Skytruck disputes.
[5] In fact, defendants did not expressly or impliedly refuse to do business with Skytruck until they excluded them from the Factory Visit.

Notwithstanding the foregoing, defendants allege that Skytruck is barred from recovery by, among other things, unclean hands, waiver and estoppel.  They also claim that Skytruck is barred from recovery because it lacked a "reasonable expectation of compensation;" because it was not appointed to be a sales representative; and because it was already compensated by Sierra Nevada.  PZL claims that Skytruck is barred from recovery because it acted is if the Distribution Agreement was still in effect even though they knew it was cancelled.  None of these affirmative defenses have any merit and must be dismissed.

To prove unclean hands, defendants must prove more than that Skytruck acted wrongfully.  They must prove that they were harmed personally. Therefore, even assuming that Skytruck acted wrongfully towards them or Sierra Nevada, since defendants cannot prove harm to themselves, their unclean hands defense must be dismissed.

It remains uncertain upon what facts PZL relies on for their estoppel defense.[6]  Since defendants did not and cannot show that they changed their position to their detriment in reliance on anything Skytruck said or did, this defense must be dismissed.

Assuming there is such a thing as a right to unjust enrichment, to prove waiver defendants must prove that Skytruck intended to and did, expressly or by implication, relinquish that right. Similarly, expectation of compensation is only a defense in those instances where the plaintiff did not intend to be compensated by defendants, or by its words or acts led defendants to believe it intended to provide its services gratuitously. But defendants' own internal correspondence proves that defendants knew that Skytruck sought compensation for its services. Since it is undisputed that the defendants tried to avoid compensating Skytruck, they are not entitled to either the waiver defense or the "expectation of compensation" defense and both must be dismissed.

---

[6] Sikorsky did not assert estoppel.

Defendants assert that Skytruck in not entitled to compensation because it was never appointed or authorized to be their sales representative. Similarly, PZL claims that Skytruck is not entitled to compensation because it acted as a distributor as if the Distribution Agreement was still in effect even though Skytruck knew it was cancelled.  But even if true, neither defendants' failure to appoint Skytruck as a sales representative nor PZL's cancellation of the Distribution Agreement bar Skytruck's claim for unjust enrichment.  That is, whether Skytruck acted with or without defendants' authorization or appointment or whether Skytruck did or did not believe the Distribution Agreement was in effect are irrelevant.  The undisputed facts are that, with or without defendants' authorization or appointment, Skytruck provided sales representative or distributor services to Sierra Nevada and defendants knowingly agreed to sell airplanes to their customer Sierra Nevada.  Therefore, the alleged defenses of failure to appoint Skytruck as a sales representative and Skytruck's acting as if the Distribution Agreement was still in effect must be dismissed.

Defendants' claim that Skytruck's unjust enrichment claim is barred by or must be set off by their settlement with Sierra Nevada is not supported by the undisputed facts.  That is, even assuming Skytruck's claim against Sierra Nevada was related to its claim against defendants, Skytruck received no compensation in the settlement. Therefore this defense must be dismissed as well.

## IV UNDISPUTED FACTS

In April and September of 2008, PZL sold twelve Skytruck airplanes to Skytruck's customer Sierra Nevada for over $90 million.  This was the culmination of fourteen years of effort by plaintiff Skytruck and its predecessor Skytruck Sales, Inc.  Throughout those fourteen years Skytruck and its predecessor, with the sometimes express and always tacit approval of PZL

and later Sikorsky, acted as the exclusive distributor in the Americas for the Skytruck airplane. Even though PZL and later Sikorsky knew that Skytruck was actively marketing and promoting the Skytruck airplane and performing demonstration flights and holding itself out on its website as the exclusive distributor in the Americas, they specifically chose not to tell Skytruck to cease and desist.

In 2007, when Skytruck brought Sierra Nevada to PZL, both Sikorsky and PZL knew that Skytruck intended to earn a commission on the sale and yet actively worked to avoid paying them.  Sikorsky and PZL accepted $90 million from Skytruck's customer and paid Skytruck nothing.  Although Sikorsky and PZL claim Skytruck should be barred from receiving any compensation for the sale because Skytruck held themselves out to be the exclusive distributor, clearly neither defendant suffered any harm. Ultimately, Skytruck settled a separate dispute with Sierra Nevada but received no compensation for that deal either.

A. With PZL's and later Sikorsky's express and tacit acquiescence, at all times, Skytruck was the de-facto distributor for the Skytruck airplane in the Americas.

1.   Skytruck Sales, Inc. was formed in 1994.  Its successor Plaintiff Skytruck Company LLC was formed on June 13, 2003 (collectively "Skytruck") with essentially the same ownership and management. (Declaration of Lance Maclean, hereinafter "Maclean" ¶¶ 1 and 2) From its inception until its operations ceased in 2008, Skytruck was dedicated solely to marketing, sales and service of the Skytruck aircraft manufactured by PZL.  Skytruck formed an international sales network, produced marketing materials such as promotional videos, a website and brochures and promoted airplane. Skytruck created and successfully branded the Skytruck trademark.  Throughout this time, Skytruck had the only demonstrator Skytruck aircraft in the Americas and employed the only pilot in North America licensed to fly it. Skytruck exhibited its demonstrator aircraft at numerous trade shows, air shows and other events it attended throughout

North America and conducted customer demonstrations in more than twenty countries.

Throughout this time, PZL and later Sikorsky knew of Skytruck's activities, knew it was holding

itself out to be the exclusive distributor in the Americas to customers and on its website and

neither company ever told Skytruck to cease and desist. (Maclean ¶¶ 3 and 17)

B. The Distribution Agreement came about as a result of Skytruck's efforts to obtain a Lockheed
Offset Program.

　　　2.　　　In 2002, Skytruck learned of an "offset" program U.S. defense contractor,

Lockheed Martin ("Lockheed") had with the Polish government.  That is, in return for sales of F-

16 aircraft to Poland, Lockheed promised to assist in selling Polish made products.  Skytruck

approached Lockheed with a proposal to assist PZL in selling Skytruck aircraft.  Part of the

proposal was Skytruck's assistance in obtaining Federal Aviation Administration (the "FAA")

type certification of the Aircraft.  Type certification was necessary before the Aircraft could be

sold in the United States and many other countries. (Maclean ¶ 4)

　　　3.　　　On August 13, 2003 Skytruck entered into a Distribution Agreement with PZL in

part to effectuate the Lockheed's offset obligation. Skytruck would continue assisting PZL in

securing FAA certification of the Skytruck aircraft, to purchase Skytruck aircraft after FAA

certification was achieved and to provide PZL with the marketing support. In return Skytruck

was granted certain exclusive and non-exclusive distribution rights and the right to buy Aircraft

in "green configuration" at a fixed agreed upon price. The term of the agreement was to be ten

years.[7] (Distribution Agreement dated August 13, 2003 Exhibit A (schedules omitted) )

(Maclean ¶ 5)

---

[7] Although FAA Certification was mentioned in the Distribution Agreement recitals, nowhere in the Agreement did
Skytruck actually agree to provide FAA Certification assistance as consideration for its distributorship.
Nonetheless, Skytruck did assist PZL in obtaining the necessary certification.  See in the Distribution Agreement:
para. 2 Subject; para. 4 Territory; para. 5 Term and para. 8 Unit Cost of the Green Aircraft Configuration to
Distributor.

4.      With Skytruck's assistance, FAA type certification was awarded in March 2004.
Type certification finally made the Skytruck airplane a viable product. Accordingly, Skytruck
submitted a purchase order for four Skytruck aircraft at the price agreed upon in the Distribution
Agreement. (Maclean ¶ 6)  (Purchase Order Confirmation PH 2950/2004 Dated October 27,
2004 Exhibit B)  PZL confirmed the PO including the price and provided serial numbers and
delivery dates. Id.  A month later, Skytruck and PZL signed a definitive purchase contract with
PZL for the first two aircraft to be delivered. (Purchase Order Confirmation PH 2949/2004 Dated
November 24, 2004 Exhibit C) (Maclean ¶¶ 6 and 7)

5.      Less than a month after signing a definitive purchase contract, PZL reneged on its
agreement and unilaterally "invalidated" and declared "null and void" the purchase contract
because, it said, the agreed upon price was too low. (Invalidation Notice PH 3559/2004 Dated
December 20, 2004 Exhibit D) PZL demanded an almost 80% increase in price and "summoned"
Skytruck to Poland to renegotiate the Distribution Agreement. The parties met in Poland on
January 17 and 18, 2005 and failed to reach an agreement on higher pricing. (Minutes of Meeting
Held on 17 and 18 January 2005 Exhibit E) On March 17, 2005, PZL purported to unilaterally
terminate the Distribution Agreement.  In a bizarre irony, they based their termination "for
cause" on Skytruck's failure to meet their new price demand.  (Notice of Termination of the
Distribution Agreement of 13 August 2003 Dated March 17, 2005 Exhibit F) (Maclean ¶¶ 8 and
9)

6.      Although Skytruck always believed that PZL's termination of the Distribution
Agreement was unlawful, they continued to act as the Skytruck airplane distributor in the
Americas for three more years, with PZL's and later Sikorsky's full knowledge and tacit
acquiescence.  At no time during this period did either PZL or Sikorsky do any Skytruck

marketing in the United States nor did they ever tell Skytruck to cease and desist its marking

efforts.  (Maclean ¶ 10) They wanted to have their cake and eat it too.

C. After Sikorsky's reported acquisition of PZL, Skytruck's attempted to establish a dialogue and get direction from Sikorsky

7.      Upon learning that Sikorsky Vice President Carey Bond was "spearheading" an

effort by Sikorsky to acquire PZL, Skytruck President Lance Maclean wrote to advise him of

Skytruck's role for the past 12 years as a distributor and of the millions of dollars spent by

Skytruck promoting the Skytruck airplane.  (Email from Maclean to Bond dated November 6,

2006 Exhibit G ) Mr. Bond never responded to this email. (Maclean ¶ 11) After Sikorsky

announced that it acquired PZL,   (Sikorsky press release dated March 16, 2007 Exhibit H) Mr.

Maclean wrote again to Mr. Bond to initiate a dialogue regarding Skytruck's sales and marketing

role.  (Email from Maclean to Bond dated April 6, 2007 Exhibit I) Mr. Bond never responded to

this email either. (Maclean ¶ 12) But ten days later, Mr. Maclean received a letter from PZL

President Janusz Zakrecki in response to his letter to Mr Bond that said "Please know that our

sales and marketing plans do not include a role for Skytruck Company, LLC."  (Letter from

Zakrecki to Maclean dated April 16, 2007 Exhibit J) (Maclean ¶ 13) The carefully written words

of this letter are significant. While PZL clearly excluded Skytruck from its own sales and

marketing plans, it failed and refused to direct Skytruck to cease and desist its sales and

marketing activities.  Nor did they say that they would not sell Skytruck aircraft to Skytruck or

its customers.

8.      For clarification of this ambiguity, Skytruck asked Sikorsky Sales Representative

Alon Redlich.[8]  Mr Redlich said:  "My general feedback is that Sikorsky will be very responsive

to any legitimate Skytruck sale opportunity. … if you can come to the table with an order, they

---

[8] Sikorsky Sales Representative Alon Redlich is considered by Sikorsky Vice President McKinney to be truthful, reliable and well informed. McKinney deposition at 39:14-40:14.  Attached as Exhibit HH.

will manufacture and sell you Skytrucks." (Email from Redlich to Filipowicz dated April 30, 2007 Exhibit K) (Maclean ¶ 14) Based on Mr Redlich's optimism, Mr. Maclean wrote back to Mr Zakrecki asking for further clarification explaining: "we continue to promote and demonstrate the Skytruck to interested parties." (Letter from Maclean to Zakrecki dated May 7, 2007 Exhibit L) Although Sikorsky and PZL knew from this letter that Skytruck was still actively operating its demonstration plane and promoting and demonstrating the Skytruck, Mr. Zakrecki again failed and refused to tell Skytruck to stop these efforts. Using the same carefully chosen words, he repeated:  "As we stated in our April 16, 2007 correspondence, our sales and marketing plans do not include a role for Skytruck Company. LLC."  (Letter from Zakrecki to Maclean dated May 22, 2007 Exhibit M) (Maclean ¶ 15)

9.      Maurice Connell, Skytruck's Chairman, wrote to Sikorsky President Jeffrey Pino inviting him to "customer demonstration flights."  (Letter from Connell to Pino dated September 10, 2007 Exhibit N) (Maclean ¶ 16) Although Sikorsky knew from this letter that Skytruck was still performing customer demonstration flights, they never responded to the invitation and they failed and refused to direct Skytruck to cease and desist. Unknown to Skytruck, Mr Redlich actually advised Sikorsky to send Skytruck a "cease and desist" letter.  Sikorsky did not take their sales representative's advice.  No cease and desist letter was ever sent. (Email from Redlich to McKinney dated December 8, 2007 Exhibit O)

10.      From the late 1990s until it was taken down in 2009, Skytruck's web site said it was the exclusive distributor for the M28 Skytruck in the Americas.  Notwithstanding the "no role" letters from Mr. Zakrecki, neither Sikorsky nor PZL ever directed Skytruck to take down this web site. (Maclean ¶ 17)

D. Skytruck's sales and marketing efforts came to fruition with the Sierra Nevada customer but they were literally barred at the door by Sikorsky

11.     In August 2006, Sierra Nevada Corporation first contacted Skytruck for information regarding the purchase of Skytruck aircraft to fulfill the requirements of a procurement contract between Sierra Nevada and the United States Air Force ("USAF").  (Email from Jenkins to Laubach dated August 31, 2006 Exhibit P) In response to Sierra Nevada's inquiry, Skytruck sent them a quote for Skytruck's demonstrator and five new aircraft.  Id. From and after August 25, 2006, Skytruck provided to Sierra Nevada technical documentation, promotional materials and other information concerning the aircraft. (Maclean ¶ 18)

12.     In October 2007, Sierra Nevada requested that Skytruck perform a flight demonstration the first week in November at Centennial Airport, Colorado (the "Demonstration") and to arrange a meeting at PZL in Mielec (the "Factory Visit") with Sierra Nevada and USAF officials. At the time, neither Sikorsky nor PZL was capable of providing the Demonstration because neither company had a Skytruck airplane or a qualified pilot in North America. Moreover, since PZL did not have a Skytruck aircraft that met USAF requirements, they could not have done this demonstration in Poland either. (Maclean ¶ 19)

13.     The dates for the Demonstration and Factory Visit, November 5th and 6th and December 6th and 7th respectively, were set by Sierra Nevada to accommodate the USAF since they had previously planned to meet at Centennial on the November dates and had previously planned to travel to Europe to visit another factory in December.  (Deposition of Capt. Mark Bailey at 33:3-20, 45:5-46:9 Exhibit II )  On November 5, 2007, Skytruck flew its demonstrator aircraft, to Centennial Airport and spent two days meeting with Sierra Nevada and the USAF, reviewing aircraft performance, systems, etc and demonstrating the aircraft. (Maclean ¶ 20)

14.     Shortly after the Demonstration, Skytruck's representative in Poland, Janusz

Chojecki met with PZL President Zakrecki and PZL Commercial Director Arthur Wojtas to inform them of Skytruck's new customer and arrange the Factory Visit.  (Report of Meeting with Sikorsky – PZL MB November 13, 2007 Exhibit Q) (Maclean ¶ 21) Although Zakrecki and Wojtas were puzzled that neither they nor Sikorsky were previously aware of this customer, they were very interested in the business opportunity.  They lacked authority, however, to host the visit without Sikorsky approval. Id. Mr Maclean wrote to Sikorsky Vice President Stephan Estill advising him of the successful demonstration and of the need for a factory visit and the dates. He also gave Sikorsky or PZL the option of dealing directly with the customer "provided that we mutually create a means to protect our efforts and investment in this project." (Letter from Maclean to Estill dated November 14, 2007 Exhibit R) (Maclean ¶ 22)

15.     Skytruck's representative in Poland met with Mr. Wojtas, again who said that he and Mr. Estill would be "cooperating" with everybody involved - Skytruck included - in order to have this deal finalized. (Email from Chojecki to Maclean dated November 17, 2007 Exhibit S) (Maclean ¶ 23) And Sikorsky's Sales Representative Redlich reconfirmed that Sikorsky would be amenable to a "cash deal" "no-strings attached." (Email from Filipowicz to Maclean dated November 20, 2007 Exhibit T)  On November 22, 2007 Mr. Maclean wrote to Mr. Estill again further explaining that it was a "cash deal" "no-strings attached." (Email from Maclean to Estill dated November 22, 2007 Exhibit U) (Maclean ¶ 24)

16.     A week before the scheduled Factory Visit, Sikorsky Vice Presicent Estill responded to Mr Maclean's correspondence falsely stating that there were no uncommitted Skytrucks.  (Email from Estill to Maclean dated November 28, 2007 Exhibit V) (Maclean ¶ 25) The next day PZL President Zakrecki wrote and using the same carefully chosen words, said for a third time "As we have stated many times to Skytruck Company, LLC, PZL Mielec's sales and

marketing plans do not include a role for your company." (Email from Zakrecki to Maclean

dated November 29, 2007 Exhibit W) (Maclean ¶ 26) Although Mr. Zakrecki knew that Skytruck

was actively promoting the Skytruck aircraft to a major new cash customer, he failed and refused

again to direct Skytruck to cease and desist this effort.  PZL did not want to kill a very lucrative

deal by telling Skytruck they would not sell airplanes to Sierra Nevada.  Moreover, Mr. Zakrecki

falsely stated that PZL would not host the visit that Skytruck requested.  In fact they did host the

factory visit as requested – only without Skytruck. Id. The same day Sikorsky Deputy General

Counsel Brogan finally responded to Mr. Maclean's year old correspondence to Sikorsky

Executives Bond and Estill and to Mr. Connell's correspondence to Sikorsky President Pino

stating that Sikorsky Aircraft had no interest in "establishing a relationship with Skytruck

Company, LLC."  (Letter from Brogan to Maclean dated November 29, 2007 Exhibit X)

(Maclean ¶ 26) But knowing that Skytruck was actively marketing and promoting the Skytruck

aircraft and performing customer demonstrations and that Skytruck had been actively negotiating

with Sierra Nevada, Sikorsky failed and refused to demand that Skytruck cease and desist these

activities.  Sikorsky was also very careful not to say anything that would prompt Skytruck to tell

its customer to go elsewhere to meet its requirements.

      17.    Based on what he thought to be true, Mr Maclean notified Sierra Nevada that PZL

refused to host the Factory Visit. (Email from Maclean to Millsap et. al dated November 29,

2007 Exhibit Y) Behind the scenes, PZL Commercial Director Wojtas told Skytruck's

representative Chojecki that Sikorsky Vice President Estill was willing to receive the delegation;

but was blocked by President Pino and the UTC-bosses.  (Email from Chojecki to Maclean dated

November 30, 2007 Exhibit Z) The Factory Visit took place on December 6 and 7, 2007 as

scheduled by Skytruck.  While Sikorsky Vice President McKinney personally welcomed

Skytruck's customer, on instructions from Sikorsky Deputy General Counsel Brogan, he literally barred Skytruck at the guard gate. (Deposition of Bruce McKinney at 38:6-16, Exhibit HH) (Maclean ¶ 27)

E. PZL and later Sikorsky knew that Skytruck continued marketing and selling Skytruck airplanes and knew that Skytruck believed it was entitled to a commission for its efforts.

18.      Sikorsky and PZL were well aware that Skytruck was continuing its marketing and sales efforts, demonstrating the airplane to prospective customers and holding itself out on its website as the exclusive Skytruck airplane distributor.  Yet they never told Skytruck to cease and desist.  Why? Because they were getting something for nothing.  That is, notwithstanding the "no role" letters, with full knowledge of its sales and marketing activities, Sikorsky and PZL allowed Skytruck to continue to act as their de-facto distributor.

19.      Just before the Factory Visit, Sikorsky Vice President Estill wrote to Sikorsky Executive David Spracklen acknowledging that Skytruck was "trying to earn a commission" on the sale. (Email from Estill to Spracklen dated December 3, 2007 Exhibit AA) Shortly after barring Skytruck at the door from the Factory Visit, Sikorsky Sales Representative Alon Redlich wrote to Sikorsky Vice President Bruce McKinney saying "[Skytruck claims] to have a customer called SNC-Sierra Nevada Corporation. It is SNC that is supposedly to buy the [aircraft] and provide the services to [the USAF]. ..... Where on earth do they get the notion that there is an entitlement for them for anything????  Don't know much more but something tells me we are heading into a rather complicated situation ......"  (Exhibit O). In response, McKinney wrote to Sikorsky/PZL Attorney Elwira Stefans asking her to ensure that Sikorsky and PZL have done everything necessary to protect them from Skytruck's claims for compensation.  Id.

20.      On April 2, 2007, Sierra Nevada Executive Larry Mitchell sent an email to Sikorsky Executive Bond and others regarding adding a few words to the sales agreement

"excluding the gent in Florida [Lance Maclean] with whom they have a lawsuit over representing the Skytruck." (Email from Mitchell to Bond dated April 2, 2007 Exhibit BB)  PZL attempted to do so but not in the way Mitchell probably intended.  That is, PZL tried to force Sierra Nevada to indemnify PZL for any claims for compensation by Skytruck. By including the following words in its first draft of the sales agreement: "[Sierra Nevada] shall indemnify, protect and hold harmless [PZL] from any and every liability, claim of liability… whatsoever, resulting from or howsoever arising out of any claim made by any brokers or agents in connection with this Agreement" where "brokers or agents" meant Skytruck. (Excerpt from first draft of Sales Agreement V. TERMS AND CONDITIONS, 5 Indemnification Exhibit CC)  Sierra Nevada did not agree to this provision and it was deleted from the final agreement. (See Exhibit FF)

F. Sierra Nevada's breach of the Non-circumvention Confidentiality Agreement with Skytruck was settled without compensation to Skytruck.

21.     Although Skytruck believed it had a binding exclusive distributorship for the Skytruck airplane, before demonstrating the airplane they asked Sierra Nevada to sign a "Non-Circumvention Confidentiality Agreement."  (Non-Circumvention Confidentiality Agreement dated October 22, 2007 Exhibit DD) By its terms, in return for the demonstration flight, Sierra Nevada agreed not to contact Sikorsky Mielec [PZL] directly or to enter into any business relationship with PZL without providing compensation acceptable to Skytruck. Id.  After Skytruck was excluded from the negotiations, Sierra Nevada purported to unilaterally terminate the Non-Circumvention Confidentiality Agreement and negotiated directly with PZL. (Letter from Millsap to Maclean dated February 4, 2008 Exhibit EE) (Maclean ¶ 28)

22.     On April 29, 2008, PZL and Sierra Nevada entered into a Sales Agreement for the purchase of two Skytruck aircraft for a total contract price of $13,011,550.00.  (Sales Agreement dated April 29, 2008 Exhibit FF) On September 25, 2008, PZL and Sierra Nevada entered into

an Amendment to the Sales Agreement adding ten Skytruck aircraft for a total contract price of

$77,740,702.50. (Amendment to Sales Agreement dated September 25, 2008 Exhibit GG)

(Maclean ¶ 29)

      23.      In 2008, Skytruck ceased all sales and marketing efforts for the Skytruck aircraft

and no longer had any use for its demonstrator aircraft. On December 5, 2008, Skytruck and

Sierra Nevada entered into a settlement agreement in which Skytruck agreed to release Sierra

Nevada from any and all claims arising out of the Non-Circumvention Confidentiality

Agreement in return for Sierra Nevada agreeing to purchase the demonstrator aircraft. Skytruck

received no compensation from this agreement since the demonstrator aircraft was owned by a

third party, MWC Aircraft LLC.  (Maclean ¶ 29)

## V ARGUMENTS

      The elements of a claim for unjust enrichment are "(1) the plaintiff has conferred a

benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted

and retained the benefit conferred; and (3) the circumstances are such that it would be

inequitable for the defendant to retain the benefit without paying the value thereof to the

plaintiff." *Tooltrend Inc. v. CMT Utensili SRL*, 198 F.3d 802, 805 (11th Cir., 1999)  Under

Florida law, unjust enrichment is "a legal fiction which implies a contract as a matter of law even

though the parties to such an implied contract never indicated by deed or word that an agreement

existed between them." *14th v. Terhaar,* 43 So.3d 877, 880 (Fla. App., 2010)  (citing *Tooltrend*)

      "Florida law recognizes that a broker may recover compensation under a theory of unjust

enrichment. … Plaintiff must show … that he was the procuring factor in the sale. In order to be

considered the procuring cause of the sale, "the broker must have brought the [parties] together

and effected the sale as a result of continuous negotiations inaugurated by him unless the seller

and buyer intentionally exclude the broker and thereby vitiate the need for continuous

negotiations. 'When the broker has brought the prospective parties together, they cannot

complain that the broker did not participate in negotiations when they have purposely excluded

the broker from these negotiations by dealing with one another directly and in secret.'" *Media*

*Services Group v. Bay Cities Comm.*, 237 F.3d 1326, 1329 (11th Cir., 2001) (citations omitted)

A. <u>Defendants' unclean hands defense (Sikorsky's 2nd and PZL's 1st) must be dismissed on the</u>
<u>grounds that defendants were not personally injured by plaintiff's alleged misconduct.</u>[9]

Defendants allege:

> Sikorsky 2nd  "Skytruck's unjust enrichment claim is barred by the doctrine of unclean
> hands. No one shall be permitted to profit from his own wrongdoing. One who seeks
> equity must do so with clean hands. Skytruck made material misrepresentations of fact
> and omissions of material fact to Sierra Nevada, when it claimed to be an exclusive
> distributor or sales representative for PZL. Skytruck made these misrepresentations and
> omissions in order to induce Sierra Nevada to deal with Skytruck and to sign a written
> agreement with Skytruck.  Skytruck continued to make these misrepresentations and to
> conceal the true nature of its relationship with PZL, despite written notice from Sikorsky
> and PZL that Skytruck had no authority to act for or on behalf of PZL. It would not be
> equitable or just to allow Skytruck to benefit from its own misconduct."

> PZL 1st  "As and for its first Affirmative Defense, PZL states that Skytruck's unjust
> enrichment claims are barred by the doctrine of unclean hands. This includes the actions,
> omissions and ongoing misrepresentations by Skytruck to Sierra Nevada, when it claimed
> to be an exclusive distributor or sales representative for PZL, when it induced Sierra
> Nevada to enter into a non-circumvention agreement, when it made assurances to Sierra
> Nevada that it could or had the right to act on behalf of PZL, and when it made
> assurances that it could or had the authority to arrange a Factory Visit or to negotiate the
> sale of any PZL aircraft."

To avail themselves of the affirmative defense of unclean hands, defendants must prove

two elements. *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993). First,

the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim

against which it is asserted. Id. at 451 (citing *Keystone Driller Co. v. General Excavator Co.*, 290

U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933)). Second, even assuming that all of defendants

---

[9] Plaintiff does not concede that unjust enrichment is an equitable remedy or that unclean hands is a defense. See
plaintiff's pending Motion to Reconsider Magistrate's Denial of Right to Jury Trial (Doc. 169).

allegations of wrongdoing are true and even assuming they were directly related to plaintiff's

unjust enrichment claims against defendants, its wrongdoing does not bar relief unless

defendants can show that they were <u>personally</u> injured by the plaintiff's conduct. Id. (citing

*Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir.1979), cert.

denied, 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980)). Moreover, although defendant

need not be the target of plaintiff's wrongdoing, such wrongdoing "does not bar relief unless the

defendant can show that it was personally injured by the plaintiff's conduct." *Citibank v.*

*Dalessio*, 756 F.Supp.2d 1361, 1367 (M.D. Fla., 2010))[10]

It is undisputed defendants were not harmed by any wrongdoing by plaintiff – indeed

they benefited from a $90+ million sale which is the subject of this litigation.[11] (Undisputed

Facts "UF" ¶ 22) Accordingly, this defense must be dismissed.

B. <u>PZL's estoppel defense (PZL's 16th) must be dismissed because even if Skytruck</u>
<u>misrepresented its relationship to PZL to Sierra Nevada, PZL never relied on the alleged</u>
<u>misrepresentation and never detrimentally changed its position as a result.</u>

PZL 16th "As and for its sixteenth (16) Affirmative Defense, PZL states Skytruck's
claims for unjust enrichment are barred in whole or part by the doctrine of estoppel."

"The doctrine of equitable estoppel requires that the following elements be shown as a

prerequisite to its application: (1) a misrepresentation of material fact by a party, which is

contrary to a later asserted representation or position by that party; (2) reliance on that

---

[10] In their response to Skytruck's motion to strike this defense, the Magistrate recommended that Florida courts have
allowed defendants to assert the affirmative defense of unclean hands in actions brought by plaintiffs who have
acted inequitably toward third parties with respect to the subject matter in litigation citing *Quality Roof Servs., Inc.*
*v. Intervest Nat'l Bank,* 21 So. 3d 883, 885 (Fla. 4th DCA 2009) and *Citibank*, Id.. But in Quality Roof, even
thought the plaintiff's wrongdoing was directed at a third party, i.e. the owner that was foreclosed upon by plaintiff,
the defendant asserting unclean hands alleged that it was also harmed by the foreclosure that was caused by
plaintiffs wrongdoing.
[11] Defendants do not claim they were harmed by Skytruck's alleged misrepresentations. On the contrary, they allege
that Sierra Nevada was harmed by delay in having to deal with Skytruck's alleged misrepresentation. This is a straw
man and has no relevance to defendants' alleged unclean hands defense. Moreover, Skytruck disputes that Sierra
Nevada was harmed since they got everything they wanted. information about the airplane; the Demonstration and
Factory Visit on the dates they requested and they fulfilled their USAF contract. Moreover, starting with the
Factory Visit, Sierra Nevada dealt directly with PZL. Therefore, no delay can be attributed to Skytruck.

representation by the party claiming estoppel; and (3) a detrimental change in the position of the party claiming estoppel caused by the party's reliance on the misrepresentation." *Mandarin Paint v. Potura Coatings*, 744 So.2d 482, 485 (Fla. App., 1999).  PZL failed to plead any facts satisfying these elements, nor is there any evidence to support them. It remains unknown what misrepresentation PZL intends to assert as a basis for its estoppel defense.  But assuming *arguendo* that they allege Skytruck's alleged misrepresentation to Sierra Nevada of its relationship to PZL, the second and third prongs of estoppel would require PZL to prove that they relied on this alleged misrepresentation and detrimentally changed its position as a result. PZL made no such allegations and such claims would be ludicrous. Therefore, PZL's estoppel defense must be dismissed.

C. Defendants' "no reasonable expectation of compensation" defense (Sikorsky's 3rd and PZL's 4th and 6th) and waiver defense (Sikorsky's 4th and PZL's 9th) and must be dismissed because Skytruck expected to be compensated and never waived this right.

Defendants allege:

> Sikorsky 3rd  "Skytruck had no reasonable expectation of being compensated at the time of performance. Skytruck was not authorized, and knew it was not authorized, to arrange or attempt to arrange the sale of M-28s for PZL. If Skytruck conferred any benefit upon Sikorsky, then it did so gratuitously and without the reasonable expectation of compensation."

> Sikorsky 4th "Skytruck's claim for unjust enrichment is barred by the doctrine of waiver. Skytruck knowingly and voluntarily waived any claim it could have for unjust enrichment, when it asked Sikorsky and PZL for permission or authority to market and sell M-28s in the United States. PZL and Sikorsky rejected the requests."

> PZL 4th "As and for its fourth Affirmative Defense, PZL states that Skytruck had no reasonable expectation of being compensated by PZL at the time of performance and that any such compensation was exclusively contemplated to have come from Sierra Nevada."

> PZL 6th "As and for its sixth Affirmative Defense, PZL states that Skytruck cannot state a claim for unjust enrichment as any purported benefit to PZL was made gratuitously and without the reasonable expectation of compensation as

Skytruck was previously advised that it was not authorized to act on behalf of PZL and/or Sikorsky."

PZL 9th "As and for its ninth Affirmative Defense, PZL states Skytruck's claim for unjust enrichment is barred by the doctrine of waiver, in that PZL and/or Sikorsky expressly rejected any alleged request by Skytruck to market and/or sell and/or act as a distribution or sales agent as concerns PZL's aircraft in the Americas."

Defendants' no "reasonable expectation of compensation" defense deliberately misstates the 11th Circuit's ruling in *Tooltrend Inc. v. CMT Utensili SRL*, 198 F.3d 802 (11th Cir., 1999) which held that such expectation is neither an element of, nor a defense to unjust enrichment. Nor do the words "reasonable expectation" appear anywhere in *Tooltrend* - or any other unjust enrichment case for that matter.

The issue is one of fairness.  That is, if Skytruck expected to be compensated and defendants were aware of their expectation, it is fair to compel defendants to compensate Skytruck. The 11th Circuit stated this rule in the negative. "No unfairness results from a denial of compensation to the claimant who had no expectation of personal remuneration at the time of performance. On the contrary, it would be unjust to impose a liability for payment on the party who accepts the services without any warning, from the surrounding circumstances or otherwise, that they were rendered for a price." Id at 807.  The undisputed facts prove that Skytruck expected to be compensated (UF ¶14) and that defendants were aware of Skytruck's expectation (UF ¶¶ 19 and 20).  That is, defendants could have refused to host the Factory Visit or to sell airplanes to Skytruck's customer - as they did initially.  (UF ¶ 16)  But since they changed their position knowing that Skytruck expected to be compensated for the sale; it is not unfair to compel them to pay Skytruck a commission.

Similarly, the undisputed facts prove that Skytruck never waived its right to be compensation based on unjust enrichment.  "Waiver is the intentional or voluntary

relinquishment of a known right, or conduct which infers the relinquishment of a known right. The essential elements of waiver are (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right. Waiver may be express, or implied from conduct or acts that lead a party to believe a right has been waived. However, when waiver is to be implied from conduct, the acts, conduct, or circumstances relied upon to show waiver must make out a clear case." *Taylor v. Kenco Chemical & Mfg. Corp.*, 465 So.2d 581, 587, 10 Fla. L. Weekly 649 (Fla. App. 1 Dist., 1985)

By definition, unjust enrichment was not a known waivable right at the time defendants allegedly rejected Skytruck's request to sell Skytruck airplanes in the U.S.[12]   In fact, it is not a right that can be waived – it is not even a right.  It is a "legal fiction created by courts to imply a "contract" as a matter of law. Although the parties may have never by word or deed indicated in any way that there was any agreement between them, the law will, in essence, "create" an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." *Tooltrend* at 805.

But even if there did exist an inchoate right to compensation at the time defendants' alleged to have rejected Skytruck's request to sell Skytruck airplanes in the U.S., it is undisputed that Skytruck never waived this right. That is, at no time did Skytruck say or imply a waiver of their right to be compensated for the sale to Sierra Nevada.  It is undisputed that at all times Skytruck expected to be compensated for its efforts and defendants knew they expected to be

---

[12] Skytruck disputes defendants' allegation that they rejected its request to sell Skytruck airplanes in the U.S.  Their only evidence of such rejection is the two "no role" letters (UF ¶¶ 7and 8).  They ignore statements by PZL's President and Commercial Director and Sikorsky's Sales Representative who contradict the "no role" letters (UF ¶¶ 8, 14 and 15 ) and the absence of a cease and desist even though defendants knew that Skytruck was continuing to demonstrate and market the airplane.

compensated.  (UF ¶¶ 14, 19 and 20).  Accordingly, defendants' waiver defense must be dismissed as well.

D.  <u>Defendant's "never appointed sales agent" defense (Sikorsky's 6th and PZL's 8th and 13th) and PZL's "termination of the Distributor Agreement" defense (PZL's 14th) must be dismissed on the grounds that, even if true, they do not bar plaintiff's claim for unjust enrichment claim.</u>

Defendants allege:

> Sikorsky 6th "Sikorsky did not appoint Skytruck as its sales representative or agent for purposes of effectuating a sale to Sierra Nevada, nor did it acquiesce in Skytruck serving in that capacity. Skytruck cannot claim to have acted as an agent for Sikorsky where the services it allegedly rendered were neither at the express or implied request of Sikorsky."

> PZL 8th "As and for its eighth Affirmative Defense, PZL states that a no time material was Skytruck appointed or otherwise authorized to function as PZL's sales representative as relates to any transaction with Sierra Nevada."

> PZL 13th "As and for its thirteen (13) Affirmative Defense, PZL states that Skytruck's claim for unjust enrich is limited in whole or part because Skytruck knew or should have know that it was not authorized to act in any capacity with regard to the sale and/or distribution of Skytruck's aircraft in the Americas.

> PZL 14th "As and for its fourteenth (14) Affirmative Defense, PZL states that Skytruck's claims for unjust enrichment are barred in whole or part because they knowingly, intentionally and willfully made representations or otherwise functioned as if the Distribution Agreement was in effect despite having express knowledge that the Distribution Agreement was cancelled."

Defendants assert that Skytruck in not entitled to compensation because it was never appointed or authorized to be their sales representative. Similarly, PZL claims that Skytruck is not entitled to compensation because it acted as a distributor as if the Distribution Agreement was still in effect even though Skytruck knew it was cancelled.  But even if true, neither defendants' failure to appoint Skytruck as a sales representative, nor PZL's cancellation of the Distribution Agreement, bar Skytruck's claim for unjust enrichment.

First Skytruck's claim of unjust enrichment is not based on having been appointed or authorized to be a sales agent or representative.  Nor is it based on any rights granted under the Distribution Agreement. On the contrary, such claims would be inconsistent with a claim for

unjust enrichment.  By suing defendants for unjust enrichment, Skytruck admits and defendants do not dispute that Skytruck had no contractual right to compensation as a sales agent or representative.

Skytruck's claim for compensation is based on the facts are that Skytruck provided sales representative or distributor services, with or without defendant's knowledge or approval and defendants knowingly accepted the benefit of Skytruck's services by agreeing to host the Factory Visit and to sell airplanes to Sierra Nevada.  (UF ¶¶ 1-4, 6-18, 22)  Therefore, the alleged defenses of failure to appoint Skytruck as a sales representative and acting as if the Distribution Agreement was still in effect must be dismissed.

E. Defendants' setoff defense (Sikorsky's 7th and PZL's 5th and 15th) must be dismissed on the grounds that plaintiff's settlement with Sierra Nevada was based on a different contract to which defendants were not a party and that Skytruck received no compensation from Sierra Nevada. Defendants allege:

> Sikorsky 7th  "Skytruck's claim is barred because it has bargained for and received value from Sierra Nevada through their contracts, including their settlement. Alternatively, Sikorsky is entitled to a set off in the amount of the value conferred by Sierra Nevada on Skytruck."

> PZL 5th  "As and for its fifth Affirmative Defense, PZL states that Skytruck cannot state a claim for Unjust Enrichment against PZL because payment has been made to Skytruck from Sierra Nevada for any alleged benefit conferred."

> PZL 15th  "As and for its fifteenth (15) Affirmative Defense, PZL states that it is entitled to a set-off for any amounts paid to Skytruck by Sierra Nevada."

Without alleging facts connecting the two, these claims conflate the benefit conferred upon Sikorsky and PZL with contractual obligations plaintiff provided to Sierra Nevada.  Nor do they allege facts upon which a plausible claim can be made that contractual compensation received by plaintiff from Sierra Nevada excused defendants' denial of compensation to plaintiff for the benefit that defendants received. But more importantly, it is undisputed that Skytruck

received no compensation from Sierra Nevada. (UF ¶ 23) Since there is no amount to setoff, this affirmative defense must be dismissed.

**Conclusion**

For the foregoing reasons Sikorsky's 2nd, 3rd, 4th, 6th and 7th affirmative defenses and

PZL's  1st, 4th, 5th, 6th, 8th, 9th, 13th, 14th and 15th affirmative defense must be dismissed.

DATED this 6th day of October 2011.

| | |
|---|---|
| s/ Robert Schultz | s/ Noel Guardi |
| Robert Schultz | Noel Guardi |
| Colorado Bar Identification Number 29607 | Colorado Bar Identification Number 9001, |
| Admitted pro hac vice | Admitted pro hac vice |
| Schultz and Associates | Guardi & Associates |
| 9710 W. 82nd Ave. | P.O. Box 381 |
| Arvada, CO 80005 | Pinecliffe, CO  80471 |
| Tel (303) 456-5565 | Tel (303) 969 8886 |
| Fax (303) 456-5575 | Fax (303) 642-0320 |
| bob@rbschultz.com | seclawyer@ionsky.com |
| And | |

Attorneys for Plaintiff
Skytruck Company, LLC

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October 2011, I caused the forgoing to be served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following addresses:

Joseph Raia
John F. Mariani
Gunster, Yoakley & Stewart, P.A
2 South Biscayne Boulevard, Suite #3400
Miami, FL 33131-1897
ATTORNEYS FOR SIKORSKY AIRCRAFT CORPORATION

Richard Hermann, II
E-mail: richard.hermann@sdma.com
Robert E. Sacks
E-mail: robert.sacks@sdma.com
David J. De Piano
E-mail: david.depiano@sdma.com
Sedgwick, Detert, Moran & Arnold LLP
2400 E. Commercial Blvd., Ste. 1100
Ft. Lauderdale, FL 33308
Tel.: (954) 958-2500 // Fax: (954) 958-2513
ATTORNEYS FOR DEFENDANT POLSKIE ZAKLADY LOTNICZE

s/ Robert B. Schultz
Robert B. Schultz