IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:09-cv-00267-CEH-SPC

SKYTRUCK COMPANY, LLC, a Florida
limited liability company,

      Plaintiff,

vs.

SIKORSKY AIRCRAFT CORPORATION,
A Connecticut corporation, and POLSKIE
ZAKLADY LOTNICZE, a corporation
Incorporated under the laws of Poland

      Defendants.                   /

## MOTION FOR SUMMARY JUDGMENT OF SIKORSKY AIRCRAFT CORPORATION

Defendant, Sikorsky Aircraft Corporation ("Sikorsky"), moves for summary judgment pursuant to Fed. R. Civ. P. 56 against Plaintiff, Skytruck Company, LLC ("Skytruck").  There are no genuine issues of material fact and Sikorsky is entitled to judgment as a matter of law on the sole remaining claim for unjust enrichment because: (i) Plaintiff dealt with Sierra Nevada dishonestly and with unclean hands; (ii) Plaintiff dealt with Sierra Nevada offiously and in defiance of the termination of its distribution rights by Polskie Zaklady Lotnicze, ("PZL"); (iii) Plaintiff dealt with Sierra Nevada pursuant to two express contracts; and (iv) Sikorsky did not receive a benefit and it cannot be liable for any benefit allegedly received by PZL.

Sikorsky adopts PZL's motion for summary judgment.

**I.**      **Introduction.**

Plaintiff claims entitlement to a commission from PZL's sale of M-28 aircraft to Sierra

Nevada Corporation.   The undisputed facts show that PZL terminated Skytruck as its US distributor in 2003, rejected Skytruck's request for a new US distribution agreement, and rejected Skytruck's request for marketing rights as recently as 2007.  Despite having received the termination notice and the subsequent rejections from PZL, Skytruck continued to hold itself out as PZL's US distributor.

Sierra Nevada is a procurement contractor for Big Safari, a unit of the US Air Force, tasked to purchase aircraft that could perform specific mission requirements.  Sierra Nevada conducted its own investigation and identified ninety aircraft that could meet mission requirements.  After Big Safari winnowed the ninety aircraft to five, including the M-28, Sierra Nevada contacted Skytruck via the internet looking for additional information on the M-28.

Despite the prior termination and rejections,  Skytruck told Sierra Nevada that Skytruck was the exclusive  distributor of the M-28 in the Americas and could arrange a factory visit with PZL.  Sierra Nevada relied on Skytruck's representations.  Skytruck never told Sierra Nevada that PZL had terminated Skytruck's distribution agreement, that PZL had rejected its requests for marketing rights, and that PZL rejected Skytruck's request for a meeting at the factory.  When Sierra Nevada learned that PZL had terminated Skytruck's distribution agreement, it ended its relationship with Skytruck and dealt directly with PZL in order to purchase the M-28 aircraft needed to fulfill the classified mission requirements.

Skytruck claims that its dealings with Sierra Nevada (i.e., flight demonstration, information, leg work) conferred a direct benefit on Defendants, and that equity requires restitution of that benefit.  Three undisputed facts bar this claim for equity.  First,  Skytruck misrepresented its authority to Sierra Nevada and acted dishonestly.  Second, Skytruck  ignored PZL's termination of its distribution rights and other rejections, and acted officiously.  Third,

assuming *arguendo* that Skytruck is entitled to restitution of the alleged benefit, it cannot be from Sikorsky.  The undisputed fact is that the alleged benefit (the price of the M-28 aircraft) was given to PZL, not Sikorsky.  To hold Sikorsky liable for a benefit conferred on PZL, Skytruck would have to pierce the corporate veil of PZL which is not possible in this case because Plaintiff does not make that claim and Sikorsky does not own PZL.

Citations to documents included in the Appendix to this Motion are "App. *."  The Appendix includes excerpts of the deposition transcripts being filed with the Court.

## II.   The Undisputed Material Facts.

### A.   Formation of Skytruck and The Distribution Agreement.

Skytruck is a Florida limited liability company.  It was formed on June 13, 2003,  in order to market and sell the M-28 aircraft. Third Amended Complaint [DE 93] ("TAC") ¶¶ 11, 13. PZL is the sole manufacturer of the M-28 aircraft at its factory in Mielec, Poland. Deposition of Lance Maclean ("Maclean Dep.") at 32, App. 1.

In August 2003, PZL and Skytruck entered into a written distribution agreement ("Distribution Agreement "), giving Skytruck exclusive distribution rights for the M-28 aircraft in the United States and non-exclusive rights in other territories.  Dep. Maclean at 32, 36, 46, Exhibit 2, App. 2.  The Distribution Agreement addressed marketing and sales, creation of marketing materials, use of the Skytruck® trademark, and FAA Type certification for the M-28. App. 2.

At all relevant times: Lance Maclean was the president of Skytruck and responsible for day-to-day business activities, Maclean Dep. at 40-41, App. 3.   David Jenkins served as Skytruck's Director of Sales and Maurice "Jack" Connell, served as Skytruck's Chairman. Deposition of David Jenkins ("Jenkins Dep.") at 271, App. 4; Deposition of Maurice Connell

("Connell Dep.") at 6, App. 5.   Janusz Chojecki was a former employee of PZL hired by Skytruck to serve as Plaintiff's agent in Poland.  Connell Dep. at 35-36, App. 6; Jenkins Dep. at 39, App. 7.

In 2004, the M-28 aircraft obtained type certification from the FAA. Dep. Maclean at 70-71., App. 8. In late 2004, Mr. Connell purchased a new M-28 aircraft that met FAA type certification standards.  Skytruck used that plane for demonstration flights and other purposes. Otherwise, Skytruck did not buy or sell a single M-28 aircraft and did not earn any revenue from the sale of M-28s.  Maclean Dep. at 48-49, App. 9.

In March of 2005, PZL issued Skytruck written notice terminating the Distribution Agreement for cause.  Maclean Dep. at 52, App. 10; App. 11; TAC ¶¶ 22-23.   Skytruck wanted a distribution agreement but could not change PZL's decision to terminate, Maclean Dep. at 53, App. 12, and could not negotiate a new distribution agreement with PZL.  Maclean Dep. at 53, 67, App. 13.  PZL never reinstated the Distribution Agreement. Maclean Dep. at 142-143, App. 14.  PZL and Skytruck never entered into a new distribution agreement for marketing rights in the United States. *Id.*  In fact, Skytruck's Third Amended Complaint ("TAC") expressly alleges that no express contract existed between Skytruck and PZL during the relevant time.  TAC ¶ 26.

In 2005, Skytruck did obtain written non-circumvention agreements from PZL allowing Skytruck to market M-28 aircraft in Brazil. Maclean Dep. at 67-69, Exhibit 4, App. 15.  In 2006, Skytruck obtained a written agreement from PZL to market M-28s in Iraq.  Maclean Dep. at 79-82, Exhibit 8, App. 16.   At all material times, Skytruck was attempting to sell Connell's demonstration M-28.  Jenkins Dep. at 111-114, App. 17.

### B.        The Sale of PZL

PZL is Polish company. TAC Initial ¶.  In April 2007, United Technologies Holdings, S.A., (UTC Holdings), a subsidiary of United Technologies Company ("UTC"), acquired PZL. Deposition of Bruce McKinney as corporate representative of Sikorsky ("McKinney  Dep.") Volume II at p. 105, 107-108, App. 18.  Although press releases and reports announced that Sikorsky acquired PZL, in fact, UTC Holdings acquired and now owns PZL.  Deposition of David Spracklen ("Spracklen Dep.") at 58, App. 19; Declaration of Artur Wojtas [DE 199-1] ¶ 6.

Sikorsky is incorporated under the laws of the state of Delaware and is wholly owned by UTC.  App. 18.  Sikorsky has no ownership interest in PZL and never has.  *Id.*

UTC acquired PZL to provide a manufacturing facility in Europe for the Sikorsky International Black Hawk Helicopter.  McKinney Dep. Volume II at p. 53-55, App. 20.  PZL is presently licensed to manufacture Sikorsky helicopters.  Sikorsky participated in the planning to acquire PZL; had oversight responsibility for modernizing PZL's facilities, manufacturing systems, and capabilities, and for conforming them to UTC/Sikorsky quality controls and standards.  McKinney Dep. Vol. II at 65-70, App. 21.

PZL's day-to-day operations are managed by a Management Committee, which includes PZL's officers. Declaration of Christopher Brogan [DE 203-1] ("Brogan Dec.") ¶8.  PZL's Supervisory Board appoints the members of the Management Committee and reports to UTC Holdings. Brogan Dec. ¶ 9.  UTC Holdings appoints the members of the Supervisory Board which includes Sikorsky employees. Brogan Dec. ¶ 10.

Sikorsky is responsible for reporting PZL financial data to UTC.  Deposition of Steven Page ("Page Dep.") at 27-30, App. 22. Sikorsky includes the revenue, liabilities, and other

financial data of PZL in Sikorsky's financial data and then reports that consolidated data to UTC for inclusion in UTC's financial reports.  Page Dep. at p. 40, App. 23.

### C.    Skytruck Asks If It Can Market M-28s.

When Skytruck learned that PZL was being sold in April 2007, it mistakenly believed Sikorsky was buying PZL.  Maclean asked Sikorsky "if and when" Skytruck will participate in the future of the M-28.  Maclean Dep. at 122-124, Exhibit 14, App. 24.  While Sikorsky did not immediately respond, the president of PZL, Janusz Zakrecki ("Zakrecki"), rejected Maclean's inquiry by letter dated April 16, 2007:

> Please know that our [PZL's] sales and marketing plans do not include a role for Skytruck Company LLC.

Maclean Dep. at 131-134, Exhibit 15, App. 25.  Nevertheless, Maclean sent another letter to Zakrecki regarding the M-28, Maclean Dep. at 143-145, Exhibit 16, App. 26, and PZL again responded by letter dated May 22, 2007, from Zakrecki to Maclean:

> As we stated in our April 16, 2007 correspondence, our sales and marketing plans did not include a role for Skytruck Company LLC. Therefore, we respectfully decline your meeting offer.

Maclean Dep. at 145-146, Exhibit 17, App. 27.

Skytruck also sent a letter dated September 10, 2007, to the President of Sikorsky, Jeffrey Pino, inviting him to participate in a demonstration flight of the M-28.  Maclean Dep. at 168-169, Exhibit 20, App. 28.  Skytruck received no immediate reply to this invitation.

### D.    Skytruck Lies to Sierra Nevada.

In early 2007, the United States Air Force, through a unit called Big Safari, hired Sierra Nevada Corporation ("Sierra Nevada") to identify aircraft that could perform a specific set of mission requirements.  Deposition of Mark Bailey ("Bailey Dep.") at 24-27, App. 29; Deposition

of Michael Bertman ("Bertman Dep.") at 17-19, App. 30.  Big Safari specializes in the expedited

acquisition of equipment at the direction of the Secretary of the Air Force, including special

forces and other classified matters.  Bailey Dep. at 16-27, App. 31; Deposition of Michael

Patterson ("Patterson Dep.") at 13-15, App. 32.  The mission requirements remain classified, but

they included short take off and landing abilities. Bertman Dep. at 9-10, 124-126, App. 33.

Sierra Nevada identified 90 aircraft through its own research.  App. 29.  Bertman Dep. at 10-12,

App. 34.  When the Air Force selected the final five candidates, including the M-28, Sierra

Nevada contacted Skytruck via internet in August 2007, looking for additional information on

the M-28.  Bertman Dep. 41-42, 67-68, Exhibit 2, App. 35; Maclean Dep. at 151-153, Exhibit

18, App. 36.

Skytruck told Sierra Nevada that it was the exclusive distributor in the United States for

M-28 aircraft and claimed to have a written distribution agreement.  Bertman Dep. at 31, App.

37;  Millsap Dep. at 17-19, App. 38.  Sierra Nevada believed that Skytruck was the authorized

point of contact for PZL, Bertman Dep. at 31-32, App. 39; Millsap Dep. at 63-65, App. 40, and

believed it had no choice but to deal with Skytruck.  Millsap Dep. at 34, App. 41.

Skytruck provided sales brochures, marketing video, technical information, pilot

operating handbook, and other information requested by Sierra Nevada to the extent it was

capable.  Bertman Dep. at 24-32, App. 42; Maclean Dep. at 42, App. 43.  Skytruck could not

answer all of Sierra Nevada's questions because it never obtained the information from PZL.

Some of the information Skytruck provided was not correct, including the prices it quoted.

Compare Maclean Dep. at 187-189, Exhibit 4, App. 44 with Millsap Dep. at 82-84, Exhibit 16,

App. 45.

Skytruck provided flight demonstrations with Connell's M-28 aircraft to Sierra Nevada

on November 6, 2007, in Denver, Colorado. App. 43. Sierra Nevada paid $3,500 for the flight demonstrations. Maclean Dep. at 42, 211, 218, App. 46.

Big Safari wanted to visit the PZL factory in Poland in order to scrutinize manufacturing techniques and capabilities. Bertman Dep. at 74-76, Exhibit 5, App. 47. Skytruck told Sierra Nevada that it would "arrange" the factory visit on the condition that Sierra Nevada first execute a Non-Circumvention Agreement ("NCA"), App. 48, and a Letter of Intent, App. 49; Maclean Dep. at 209-211, App. 50; Jenkins Dep. at 185-186, App. 51; which Sierra Nevada signed.

In the Non-Circumvention Agreement, Skytruck agreed to "originate and create" contacts for Sierra Nevada with the PZL factory. App. 48. Those contacts were to include a visit to the factory in Poland. App 50. That agreement also purported to prohibit Sierra Nevada from dealing with PZL without paying compensation to Skytruck. Dep. Maclean at 215-218, 222, App. 52.

Skytruck did not tell Sierra Nevada that PZL had terminated its Distribution Agreement in March 2005. Bertman Dep. at 50-52, App. 53; Millsap Dep. at 40-42, App. 54; App. 50. Skytruck did not tell Sierra Nevada that PZL had rejected Skytruck's request for marketing rights in PZL's April 16 and May 22, 2007 letters and that PZL rejected Skytruck's request for a meeting at the PZL factory in Poland. App. 50; App. 53. Sierra Nevada representatives have testified that had they known that PZL had terminated Skytruck and that PZL had written the April 16 and May 22, 2007 letters, Sierra Nevada would not have dealt with Skytruck and it would not have signed the Non-Circumvention Agreement. App. 50; App. 54.

### E.    Skytruck Ignores PZL's Rejection Letters.

Skytruck's Maclean admits he received PZL's rejection letters of April 16 and May 22, 2007. App. 25; App. 27. But, Skytruck dealt with Sierra Nevada in defiance of these letters.

Maclean testified that the Distribution Agreement gave Skytruck the right to deal with Sierra Nevada despite PZL's termination of that agreement. Maclean Dep. at 92-94, 151-152, App. 55.

Maclean also testified that Skytruck could disregard PZL's letters based on information it allegedly received from Alon Redlich, an independent sales representative for Sikorsky in Poland, and information it received from Chojecki, PZL's agent in Poland.  Maclean Dep. at 136-137, 147-151, App. 56.

Plaintiff produced three communications which it attributes to Redlich, but which have not been authenticated.  Alon Redlich e-mails dated 5/31/07, 4/30/07, 11/20/07, App. 57.  None of these communications and no other evidence in the record demonstrates that Redlich had authority to speak for or on behalf of PZL or Sikorsky.  In fact, in one such email dated November 20, 2007, Redlich expressly denies such authority:

> And as usual, this and all my communications with you on the subject, are on my own behalf, not on behalf of Sikorsky.
>
> I can't speak for them.  Their lawyers do that ….

Maclean Dep. at 231-234, Exhibit 32, App. 58.  Skytruck produced four communications from Chojecki, where he claims to report on meetings with PZL employees, including its president, Zakrecki.  Jenkins Dep. at 130-133, Exhibit 8, App. 59.

None of Chojecki's reports claim that PZL was authorizing Skytruck to represent PZL, that PZL was giving Skytruck marketing rights, or that PZL was retracting the April 16 and May 22, 2007 letters.  *Id.* These reports reflect PZL's continuing refusal to make a deal with Skytruck. *Id.*

**F.    Sierra Nevada Terminates Plaintiff for its misrepresentations.**

From October 19, 2007 through November 30, 2007, Skytruck led Sierra Nevada (and Big Safari for that matter) to believe that Skytruck would arrange a factory visit in Mielec on December 6 and 7, 2007.  Bertman Dep. at 33-35, Exhibits 5, 8,  App. 60.  However, Skytruck did not ask PZL for the visit or tell PZL that it was dealing with a U.S. government procurement contractor, until Chojecki met with PZL on November 13, 2007.  App. 59.  According to Chojecki's report of that meeting, PZL was surprised that Skytruck was dealing with such an important government prospect without the knowledge of PZL and Sikorsky.  *Id.*  More importantly, according to Chojecki, PZL did not agree to host the factory visit, refused to consider Skytruck's proposed Non-Circumvention Agreement, and instructed Skytruck to describe the prospective deal in writing to Sikorsky.  *Id.*

On November 21 and 29, 2007, Skytruck sent written requests for a factory visit to Steven Estill of Sikorsky and to PZL.  Maclean Dep. at 237-239, Exhibits 33, 34, App. 61. In response, PZL gave the same answer it gave in April and May 2007.  PZL answered in email dated November 29, 2007, and stated:

> As we have stated  many times to Skytruck Company LLC, PZL Mielec's sales and marketing plans do not include a role for your company.  Thus, we will not be hosting a visit on your behalf as requested in your note.

Maclean Dep. at 243-244, App. 62.  In a letter dated November 29, 2007, Sikorsky stated:

> In response to your and Mr. Connell's communications with Mr. Pino, Mr. Estill and others please be advised that Sikorsky Aircraft has no interest in establishing a relationship with Skytruck Company LLC.  We will not be responding to the requests from Skytruck Company and we ask that you not forward information or proposals to anyone at Sikorsky Aircraft.

Maclean Dep. at 244-247, Exhibit 35, App. 63.

Maclean had no choice but to notify Sierra Nevada that Skytruck could not go forward with the factory visit as planned.  Maclean did not tell Sierra Nevada that Skytruck had never obtained approval of the visit.  Instead, he blamed Sikorsky for supposedly "cancelling" the factory visit:

> Sikorsky Aircraft Company, have been well aware of the nature and purpose of your visit for some time.  The real reason for the cancellation remains unknown to us.
> …
> Certainly we wouldn't have gone to the expense of demonstrating our airplane to you had we any doubts about Sikorsky's willingness to welcome you and sell their airplanes.

Maclean Dep. at 245-248, Exhibit 36, App. 64.

Captain Mark Bailey of Big Safari, called Sikorsky and arranged for the factory visit.  Spracklen Dep. at 16-18, Exhibit 2, App. 65.  When Sierra Nevada learned from PZL that Skytruck had no authority to represent PZL, it gave Skytruck written notice of Skytruck's misrepresentations and failures to perform the Non-Circumvention Agreement and demanded a cure.  Maclean Dep. at 272-275, 293-295, Exhibits 37, 40, App. 66; Millsap Dep. 12-16 Exhibits 2, 3 App. 67.  Skytruck responded that it had been operating under the Distribution Agreement which remained in effect.  Maclean Dep. at 289-291, Exhibit 38, App. 68.  In fact, all Skytruck witnesses claimed that Skytruck was dealing with Sierra Nevada under the authority of the 2003 Distribution Agreement.  App. 68; Jenkins Dep. at 295-296, App. 69, Connell Dep. at 45-47, App. 70.

Sierra Nevada terminated the Non-Circumvention Agreement,  Maclean Dep. Exhibit 40, App. 66, and dealt directly with PZL.  In April 2008, Sierra Nevada and PZL entered into a contract for the purchase and sale of M-28 aircraft.  Dep. Millsap at 75, App. 71.  Sierra Nevada

has ordered ten aircraft and has the right to order two more.  McKinney Dep. Vol. II at 27-28, App. 72.

At all times, Skytruck was trying to sell Connell's M-28 to Sierra Nevada, App. 17, and settled all claims with Sierra Nevada by selling that aircraft to Sierra Nevada.  Maclean Dep. at 296-298, App. 73.

### G.    Skytruck's Claim and the Alleged Direct Benefit.

Skytruck claims that it was responsible for PZL's sale of the M-28s to Sierra Nevada because of its "leg work."  TAC ¶ 91.  Skytruck claims that PZL sold twelve M-28s for approximately $90 million and that it is entitled to compensation in excess of $13.8 million. *See* Plaintiff's Responses to Sikorsky's Interrogatories at No. 2, App. 74; Preliminary Report of Peter H. Burgher CPA dated July 5, 2011 at 4, App. 75. It is not disputed that Sierra Nevada purchased the M-28 aircraft from PZL and paid PZL.  It is undisputed that Sikorsky was not paid the purchase price of the airplanes.  Page Dep. at 53-54, App. 76.

### III.    Unjust Enrichment Cannot Pierce the Corporate Veil.

Before addressing Skytruck's undisputed misrepresentations and omissions, there is a threshold legal issue that requires judgment for Sikorsky.  Stated simply, even assuming that there was some benefit, Sikorsky did not receive that benefit.

### A.    PZL Received The Alleged Benefit – not Sikorsky.

Unjust enrichment is a form of restitution.  *See Circle Finance Co. v. Peacock*, 399 So. 2d 81, 84 (Fla. 1st DCA 1981); *see also* Restatement of Restitution § 1 (1937).  Plaintiff must prove it conferred a direct benefit on Sikorsky in order to obtain restitution of that benefit from Sikorsky.  *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007).

"An indirect benefit is not sufficient to support a claim for unjust enrichment." *Tilton v. Playboy Entm't Group, Inc.*, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007).

If the Plaintiff gave the benefit to some party other than the defendant, then it did not confer a direct benefit on the defendant.  *See BCIJ, LLC v. LeFevre*, 2010 WL 1289842 (M.D. Fla. March 24, 2010) (where plaintiff paid money to Florida LLC, which in turn paid the funds to the defendant bank, the plaintiff did not confer a direct benefit on the defendant bank); *Century Senior Services v. Consumer Health Benefit Assoc., Inc.*, 2011 WL 893019 (S.D. Fla. March 9, 2011) ("A benefit that defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment.")  Moreover, plaintiff cannot confer a direct benefit on the parent of a subsidiary by paying the benefit to the subsidiary.  The parent did not receive the benefit, even if the parent reported the subsidiary's revenues in the parent's consolidated tax returns.  *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 2d 400 (Fla. 3d DCA 2009).

Skytruck aims to hold Sikorsky liable for the monies paid to PZL by Sierra Nevada. Plaintiff knows Sikorsky did not receive the money and rests its claim on the fact that Sikorsky includes PZL's income in Sikorsky's consolidated financial reports to UTC.   Specifically, Plaintiff claims it conferred a "direct benefit" on Sikorsky because:

> The sales and revenues of PZL are included in those of Sikorsky and UTC in their consolidated statements of operations.

TAC ¶ 95.  Plaintiff's interrogatory answer states:

> The direct benefit conferred upon Sikorsky is the sale by the Sikorsky business unit of UTC [PZL] of aircraft plus related sales of parts and service in an amount exceeding $90 million.

*See* App. 76 at No. 1.  Skytruck also relies upon the following opinion of its CPA to show a direct benefit was given to Sikorsky:

> *For accounting purposes* the deposition of Stephen Page [Sikorsky Controller] makes clear 'Sikorsky reports PZL's results'.  Mr. Page also explained Sikorsky's accounting procedures.  'These entries allow Sikorsky to report the consolidated results of all of its subsidiaries.  PZL is one of them.'  *Thus it is not important who owns the stock, a legal procedure, but how the operations are accounted for.*

*See* App. 75 at 3-4 (footnote omitted)(emphasis added).[1]  Thus, Skytruck and its CPA claim that consolidated reporting of revenues "for accounting purposes," trumps the legal significance of who owns PZL's stock and the legal significance of the separate corporate identities of PZL and Sikorsky.

Plaintiff concedes Sikorsky is a separate entity from PZL.  Second Amended Complaint [DE 58] ("SAC") ¶ 27.  Notwithstanding, Plaintiff claims Sikorsky is liable for monies paid to PZL because Sikorsky "accounted for the operations" by reporting PZL's revenues in consolidated financial statements of operation.  In reality, Plaintiff claims unjust enrichment can reach Sikorsky by piercing the PZL corporate veil.  This theory was rejected thirty-five years ago in *United States v. Dean Van Lines*, 531 F.2d 289 (5th Cir. 1976).

### B.     Unjust Enrichment Cannot Pierce the Corporate Veil.

*Dean Van Lines* controls this issue.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).  In *Dean Van Lines*, the United States brought suit for unjust enrichment against Dean Van Lines, the parent of a foreign subsidiary.  *Dean Van Lines*, 531 F.2d at 290. The plaintiff claimed that it had conferred a direct benefit upon the subsidiary and that when the parent sold the subsidiary's stock, the parent obtained the direct benefit.  *Id.* at 290-291.  Thus,

---

[1] Sikorsky is moving to strike Burgher's opinion as contrary to law.

the plaintiff alleged that the parent was unjustly enriched by a benefit conferred upon its subsidiary. *Id.*

The District Court accepted plaintiff's theory. The Fifth Circuit reversed and held that where the benefit was paid to the subsidiary, plaintiff cannot recover from the parent unless plaintiff can pierce the corporate veil. *Id. Dean Van Lines* established these governing principles:

> In support of its position, the government [plaintiff] relies upon the broad generalization that unjust enrichment 'will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obligated by natural justice and equity to refund.' *Bayne v. United States*, 1876, 93 U.S. 642, 643, 23 L. Ed. 997, 998. However, these principles of law do not inexorably lead to the conclusion proffered by the government *for here present are competing state interests in the preservation of corporate identity*. As stated by the Florida Supreme Court:
>
> 'Those who utilize the laws of this state in order to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil.' *Robert's Fish Farm v. Spencer*, Fla. 1963, 153 So. 2d 718, 721.

*Id.* at 291 (emphasis added) (footnote omitted); *See aslo Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1119-1221 (Fla. 1984).

Skytruck relies on the same theory of unjust enrichment rejected by *Dean Van Lines*. PZL received the direct benefit, the payment, for the M-28 aircraft, not Sikorsky. Skytruck is effectively attempting to pierce the corporate veil of PZL by claiming Sikorsky received the benefit of that payment when Sikorsky reported PZL's revenues in consolidated financial statements of operation. That theory does not work.

If this unbridled theory of unjust enrichment were to prevail, then Skytruck could make that same claim against UTC, since PZL and Sikorsky's financial data are included in UTC's consolidated financial statements, and against any UTC shareholder who received dividends or

other revenue from UTC shares.  In essence, the chain of liability for unjust enrichment would destroy the integrity of corporate identity under Florida law.  This result would be absurd, which is why it was anticipated and rejected by *Dean Van Lines*.  *See id.*

### C.     Plaintiff Cannot Pierce the Corporate Veil.

Plaintiff cannot pierce the veil of PZL to attach liability on Sikorsky, for the common sense reason that Sikorsky does not own PZL.  *See Mayer v. Eastwood Smith & Co.,* 164 So. 684 (Fla. 1935) (where defendant did not own corporation, there was no relationship that would warrant liability).  UTC Holdings owns PZL, so as a matter of law it is not possible to pierce the corporate veil to get to Sikorsky.  But assuming *arguendo* that Sikorsky is the parent of PZL, summary judgment is proper because the Third Amended Complaint does not bother to bring any claim to pierce the corporate veil or to make PZL the alter ego of Sikorsky.

In order to pierce the corporate veil, Florida law requires: (1) that Sikorsky dominated and controlled PZL to such an extent that PZL had no independent existence and that PZL was the alter ego or mere instrumentality of Sikorsky; (2) PZL's corporate form must have been used fraudulently or for an improper purpose; *and* (3) the fraudulent or improper use of PZL's corporate form caused injury to Skytruck.  *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008); *Dania Jai-Alai Palace, Inc.,* 450 So. 2d at 119-1221.

The Third Amended Complaint does not allege these elements.  It alleges that Sikorsky "owns and controls" PZL and that PZL's earnings are attributed to Sikorsky in a consolidated statement of operations.  TAC ¶¶ 94, 95.  Allegations of "domination and control and undercapitalization are insufficient" to pierce the corporate veil.  *Gov't of Aruba v. Sanchez*, 216 F. Supp. 2d 1320, 1362 (S.D. Fla. 2002).  PZL is a separate legal entity from Sikorsky.  Thus,

even if Plaintiff alleged that PZL was the alter ego of Sikorsky (the alleged parent), that allegation is not sufficient. *Sanchez*, 216 F. Supp. 2d at 1362.

In a recent unreported decision, the Eleventh Circuit sustained a verdict of unjust enrichment against the shareholders of a health care clinic. *State Farm Mut. Automobile Ins. Co. v. Physicians Injury Care Center, Inc.*, 2011 WL 1988551 (11th Cir. May 23, 2011). The shareholders appealed the unjust enrichment verdict on the ground that the evidence failed to establish that a benefit was conferred on them individually. The Court found there was sufficient evidence of a benefit conferred on the shareholders personally (and of their liability for fraud), where they directed and controlled fraudulent medical and billing practices for 957 patient files. *Id.* at 7, 9, 11 .

*State Farm* is consistent with the rule of *Dean Van Lines* that Plaintiff cannot recover in unjust enrichment unless it can pierce the corporate veil. In *State Farm*, the shareholders caused the corporation to engage in systematic insurance fraud – conduct that sustained their personal liability and merits piercing the corporate veil. If the Court finds any inconsistency between *Dean Van Lines* and *State Farm*, then Sikorsky respectfully suggests that *Dean Van Lines* is binding precedent whereas *State Farm* is not reported and therefore not binding. *Newberg v. Geo Group, Inc.*, 2011 WL 2533804, * 8 (M.D. Fla. June 27, 2011).

The rule of law established in *Dean Van Lines* should not be ignored. The Court should not expand the judge made equitable doctrine of unjust enrichment so that it supersedes the Florida legislature's interest in preserving the integrity of corporate identity.

## IV.    Express Contracts Bar Unjust Enrichment.

Skytruck clearly dealt with Sierra Nevada pursuant to two express agreements, the Distribution Agreement and the Non-Circumvention Agreement. App. 52. Under Florida law,

unjust enrichment claims are only permitted where there is no contract governing the rights of the parties at issue. *See Ocean Comm., Inc. v. Bubeck*, 956 So. 2d 1222, 1226 (Fla. 4th DCA 2007). PZL's motion for summary judgment fully sets forth this argument.

### V.   Gratuitous and Officious Conduct and Unclean Hands.

Florida law sets limits on the doctrine of unjust enrichment. *See Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 807 (11th Cir. 1999); *Tipper v. Great Lakes Chem Co.*, 281 So. 2d 10, 13-14 (Fla. 1973); *Hermanowski v. Naranja Lakes Condo. No. Five, Inc.*, 421 So. 2d 558, 559-560 (Fla. 3d DCA 1982). There can be no recovery for unjust enrichment where the benefit is conferred gratuitously, officiously, or with unclean hands. *See id*.

### A.   Unclean Hands Bars Unjust Enrichment.

Unjust Enrichment is equitable in nature. *Fito v. Attorney's Title Ins. Fund, Inc.*, --- So. 3d ---, 2011 WL 3477019, * 3 (Fla. 3d DCA 2011). Plaintiff is only entitled to recover in order to avoid an "inequitable" result. *Tooltrend, Inc.*, 198 F.3d at 804, 807-808. A party that seeks equity must do equity and a plaintiff with unclean hands is not entitled to equity. *Flynn v. Sarasota County Pub. Hosp. Bd.*, 169 F. Supp. 2d 1363, 1371 (M.D. Fla. 2001); *Epstein v. Epstein*, 915 So. 2d 1272, 1275 (Fla. 4th DCA 2005); *Demorizi v. Demorizi*, 851 So. 2d 243, 246-247 (Fla. 3d DCA 2003). Unclean hands simply means to act dishonestly. *Leeward v. Galaxy Cable, Inc.*, 2006 WL 2868928, * 6 (M.D. Fla. Oct. 6, 2006). This doctrine reaches dishonest actions directed at third parties. *Faber v. Landam,* 123 So. 2d 405, 408 (Fla. 2d DCA 1960). It is undisputed Skytruck did not deal honestly with Sierra Nevada.

At all materials times, Skytruck led Sierra Nevada to believe that it was the exclusive authorized distributor for the M-28 in the United States pursuant to the written Distribution Agreement. Skytruck did not tell Sierra Nevada that PZL had given Skytruck written notice

terminating that Distribution Agreement in March 2005; or, that there was any dispute regarding Skytruck's authority to market M-28 aircraft. Skytruck did not tell Sierra Nevada about PZL's letters from April 16 and May 22, 2007 rejecting Skytruck's request to market the M-28 and rejecting Skytruck's request for a meeting at the factory. Infra, p. 8, 9, 11. When confronted with these communications in deposition, Skytruck's president, Lance Maclean, conceded that he failed to disclose this information to Sierra Nevada. Maclean Dep. at 285-286, App. 77.

Skytruck misled Sierra Nevada to sign the Non-Disclosure Agreement. Infra, p. 8. Skytruck misrepresented its ability to arrange the factory visit and led Sierra Nevada to believe that the factory visit was approved and "arranged." Infra, pp. 8, 10-11. When Skytruck finally asked PZL to authorize the factory visit in its email of November 21 and 28, 2007 (two weeks before the December 6 visit), the requests were denied. App. 62, 63. When Maclean told Sierra Nevada that the factory visit could not proceed, he did not honestly disclose the reasons and the circumstances for doing so. He characterized this as the cancellation of a previously approved visit. Infra, p. 11. Jenkins told Sierra Nevada some story about a disagreement related to South America, Bertman Dep. at 31-33, App. 78, which even Maclean admitted was false. Maclean Dep. at 257-258, App. 79.

The undisputed facts show that Skytruck did not tell Sierra Nevada that PZL terminated the Distribution Agreement and rejected Skytruck's requests to represent the M-28. Infra, p. 8. These misrepresentations were material. Sierra Nevada had a responsibility to perform its contract in a timely fashion. If it knew that Skytruck did not have the authority of PZL, it would not have dealt with Skytruck. App. 53; App. 54. Skytruck's dishonesty induced Sierra Nevada to deal with Skytruck and that dishonesty is at the root of Skytruck's claim for compensation. That dishonesty is unclean hands.

**B.      Gratuitous and Officious Conduct bars Unjust Enrichment.**

The Eleventh Circuit recognizes that gratuitous and officious conduct bars recovery for

unjust enrichment.   *See Tooltrend, Inc.*, 198 F.3d at 807-808.   Black's Law Dictionary defines

an officious intermeddler as "[a] person who confers a benefit on another without being

requested or having a legal duty to do so, and who therefore has no legal grounds to demand

restitution for the benefit conferred."   . BLACK'S LAW DICTIONARY 1195 (9th ed. 2009).   Florida

has adopted Section 112 of the Restatement (First) of Restitution ("Restatement") with sets forth

the governing rule:

> *A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution*, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons.

(emphasis added).   The Restatement sets forth the following illustration:

> During A's absence and *in the belief* that A will be willing to pay for the work, B improves A's land, which is worth and is offered for sale at $5000, to such an extent that upon A's return he sells the land for $8000. B is not entitled to restitution.

*Id.*, illustration 1 (emphasis added).   As in that illustration, Skytruck performed unsolicited

services, marketing to Sierra Nevada, supposedly in reliance on communications from Alon

Redlich and Chojecki.   Setting aside the fact that these communications contain inadmissible

hearsay of Redlich and PZL's officers, Skytruck could not have reasonably relied on these

communications and ignored PZL's April 16 and May 22, 2007 rejection letters.[2]   Redlich had

---

[2] "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir. 1999) (internal quotations omitted). However, "a district court may consider a hearsay statement in passing on a motion for summary

no authority to speak for Sikorsky and said so, while Chojecki's reports did not contradict PZL's prior rejections.

The Restatement illustration teaches that Plaintiff's subjective belief that it may get paid does not overcome PZL's express rejection of Plaintiff's services.  Florida adopted section 112 of the Restatement in *Hermanowski*, 421 So. 2d at 560.  In that case, a cable company made improvements to a customer's cable system, without the customer's knowledge and after the customer had rejected the improvements offered.  The cable company could not recover the value of the improvements under a theory of unjust enrichment, even though it could not remove the improvements, because the cable company was *"no more than an officious provider of services never agreed to nor approved of by the [customer]."  Id.* (emphasis added).

Like the cable company, Skytruck acted officiously.  Plaintiff provided its services in defiance of PZL's express rejections.  Skytruck asked PZL about marketing and selling the M-28 and PZL clearly and unconditionally said, "no" in two letters.  *See* App. 26; App. 28.  Skytruck chose to ignore PZL's letters and sought different answers through back channels like Redlich and Chojecki.  Skytruck concealed its lack of authority from Sierra Nevada.  Skytruck also concealed its dealings with Sierra Nevada from PZL until November 13, 2007, and acted without Defendants' consent and knowledge.

When Chojecki reports that he finally told PZL on November 13, 2007, that Skytruck was dealing with a government contractor, he reported that PZL did not agree to the factory visit and did not authorize Skytruck to market M-28 aircraft.  *See* App.  62.  Chojecki concluded that PZL's management "seemed to be seriously interested in that business chance that I was

---

judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Id.* at 1323 (internal quotations omitted).

presenting to them….."  *Id.*.  That statement could not have justified Skytruck's defiance of

PZL's letters of April 16 and May 22, 2007 and certainly could not have justified Skytruck's

dishonest dealings with Sierra Nevada since August 2007 – four months before.    Whatever

reliance Skytruck may have invested in Chojecki's November 13th report ended on November

29, 2007, when Sikorsky and PZL again refused to deal with Skytruck.  *See* App. 65; App. 66.

Skytruck's claim is akin to piracy.  Skytruck wants the right to market the M-28 without

the manufacturer's consent and in defiance of the manufacturer's prior rejections.  It then wants

to force the manufacturer to pay Skytruck for its unauthorized activity or forgo the potential sale.

Skytruck's claim will replace the existing rule of law prohibiting officious conduct and with a

new rule that will promote the chaos of unauthorized conduct.

Skytruck's repeated dishonesty with Sierra Nevada and the concealment of those dealing

from PZL underscores the officious nature of its conduct.  Skytruck had to lie and hide because it

knew it was acting in defiance of PZL's authority.  Plaintiff is not entitled to compensation in

equity under such circumstances.

### C.   Skytruck's Bad Faith.

Plaintiff's claim rests upon dishonesty.  Plaintiff could not have dealt with Sierra Nevada

and manufactured this claim, without the misrepresentations.   From August 2007 through

January 2008, Plaintiff told Sierra Nevada that it was the exclusive distributor of the M-28 under

the 2003 Distribution Agreement.   In deposition, every Skytruck representative testified that

Skytruck dealt with Sierra Nevada under the Distribution Agreement.  App. 71, 72, 73.

In its first sworn pleadings in this action, Skytruck alleged it had "distribution rights" in

the United States for the M-28.  Verified Complaint ¶ 9 [DE 1]; Amended Verified Complaint ¶

59 (DE 23); Second Amended Complaint ¶¶ 24, 30, 63, 69 [DE 58].  These pleadings proved to

be consistent with the known facts as evidenced by the deposition testimony of Maclean, Connell and Jenkins.

Sikorsky's first motion to dismiss disclosed that PZL had terminated the Distribution Agreement in March 2005 and that Skytruck had no distribution rights in 2007 and 2008. However, this did not deter Skytruck from continuing to allege that it had distribution rights under that Agreement.  Amended Verified Complaint ¶ 59 [DE 23]; Second Amended Complaint ¶¶ 24, 30, 63, 69 [DE 58].

Skytruck did not switch its strategy, until PZL moved to compel arbitration on the grounds that Skytruck's dealings with Sierra Nevada were related to the terminated Distribution Agreement.  When the Court *sue sponte* dismissed Plaintiff's shotgun pleading, Plaintiff filed a new pleading, Third Amended Complaint, that disregarded the known facts in order to switch strategies.

The Third Amended Complaint concedes that the Distribution Agreement had been terminated all along in March 2005; admits that Plaintiff's claims under that agreement are barred by a Polish three year statute of limitations; and, alleges that its claims arose in 2007 and 2008 after the termination of the Distribution Agreement.  Now, instead of claiming that it had "distribution rights," Plaintiff claims to have been an "authorized sales representative." *Compare* TAC ¶¶ 23, 55 *with* Verified Complaint ¶ 9 [DE 1], Amended Verified Complaint ¶ 59 [DE 23], Second Amended Complaint ¶¶ 24, 30, 63, 69 [DE 58].

Strategically, the Third Amended Complaint successfully avoided arbitration.  However, the Third Amended Complaint contradicts the testimony of Maclean, Jenkins and Connell that Skytruck dealt with Sierra Nevada under the authority of the Distribution Agreement. Consequently, Plaintiff's claim for unjust enrichment continues to rest upon dishonesty.

## VI.       Conclusion.

Clearly, Skytruck dealt with Sierra Nevada in reliance on the terminated Distribution Agreement.  For whatever reason, Skytruck never sought to enforce the rights it claimed under the Distribution Agreement.  Those claims are now time-barred and Plaintiff attempts to re-invent the facts to manufacture a claim for unjust enrichment.  But the facts do not support that claim.  Three undisputed facts warrant summary judgment: (i) Sikorsky received no benefit; (ii) Skytruck was dishonest with Sierra Nevada; (iii) Skytruck acted without the knowledge and consent of PZL; and (iv) Skytruck dealth with Sierra Nevada pursuant to two express contracts.

WHEREFORE, Defendant, Sikorsky Aircraft Corporation, respectfully requests entry of summary judgment.

Respectfully submitted,

<div style="margin-left:40%;">

GUNSTER, YOAKLEY & STEWART, P.A.
*Attorneys for Sikorsky Aircraft Corporation*
One Biscayne Tower, Suite 3400
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 376-6000
Facsimile: (305) 376-6010


By:____/s/ Joseph L. Raia_____
       Joseph L. Raia
       Florida Bar No. 322083
       jraia@gunster.com
       Michael B. Green
       Florida Bar No. 87571
       mgreen@gunster.com

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 6, 2011, I electronically filed the forgoing with the Clerk of the Court by using the CM/ECF system.

By:   /s/ Joseph L. Raia
                    Joseph L. Raia

MIA_ACTIVE 3986927.5